THE PEOPLE *ex rel.* DAN E. COSTELLO, County Treasurer, Applicant-Appellant, *v.* JOSEPH H. LERNER *et al.*, Objectors-Appellees.—JOSEPH H. LERNER *et al.*, Plaintiffs-Appellees, *v.* ILLINOIS PROPERTY TAX APPEAL BOARD *et al.*, Defendants-Appellants.

Fifth District   No. 76-80

Opinion filed September 27, 1977.—Rehearing denied November 9, 1977.

William J. Scott, Attorney General, of Chicago (Imelda R. Terrazino, Assistant Attorney General, of counsel), for defendants-appellants.

Robert H. Rice, State's Attorney, of Belleville (Howard Clotfelter, Assistant State's Attorney, of counsel), for applicant-appellant.

W. E. Ackermann and Jennings, Tedesco & Flynn, both of Belleville (Robert L. Jennings and Patrick M. Flynn, of counsel), for appellees.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This case arises from the action of the Board of Assessors of St. Clair County which in 1972 reassessed certain properties. The taxpayers administratively sought relief from the assessments before the Board of Review where they were not fully successful, and from there they perfected appeals to the State Property Tax Appeal Board. This Board affirmed the determinations of the Board of Review and the taxpayers then instituted proceedings for administrative review in the circuit court of St. Clair County. In parallel proceedings the taxpayers paid their 1972 real estate taxes, and subsequently their 1973 and 1974 taxes, under protest and they filed objections to the applications for judgment for the taxes filed by the county treasurer acting as the ex-officio collector of taxes. The trial court consolidated all the foregoing cases and entered

judgment overruling the Property Tax Appeal Board, dismissing the applications for judgment, and ordering the taxes for the years 1972, 1973 and 1974 to be recomputed on the basis of 1971 assessments with proper refunds to be made to each taxpayer for those years. Both the Property Tax Appeal Board and the county treasurer appeal from the judgment entered.

This appeal involves 12 taxpayers (one of the taxpayers only filed an objection to his 1973 taxes but this case was also consolidated with those of the other taxpayers). Upon consolidation of the administrative review cases and the tax objection cases, it was agreed to by the parties that the evidence presented before the Board of Review and the Property Tax Appeal Board would apply equally to the tax objection cases and that no additional evidence would be introduced in connection therewith. The evidence essentially shows that the instant taxpayers own certain commercial and industrial real estate properties in Belleville Township. St. Clair County is divided into four assessment districts and District Two thereof includes Belleville Township and four other townships. The quadrennial assessment year for District Two was 1971. In 1972, the Board of Assessors of St. Clair County revised the assessments of commercial and industrial properties and of only those such properties within Belleville Township with three exceptions. Farm real estate and residential property in Belleville Township was not similarly reassessed unless such property was a part of a commercial establishment. In addition commercial and industrial properties situated in townships other than Belleville Township in District Two were not similarly reassessed. There was also testimony that St. Clair County had not authorized the classification of real estate for tax purposes.

The evidence additionally showed that the assessments of the Board of Assessors were solely based on appraisals made by a private appraisal firm; that the work of the assessors was not completed until December 15, 1972; that an affidavit signed by two members of the Board of Assessors was not attached to the assessment books at the time of a hearing before the Board of Review on January 8, 1973, but was subsequently attached thereto; that the affidavit bore the date September 15, 1972, and stated that the work of the Board of Assessors had been completed on that date; and that the Board of Review had continued its work in January 1973, although its authority had expired.

On the basis of this evidence the trial court ruled that the reassessments in issue violated the constitutional guarantee of uniformity of taxation set forth in article 9, section 4 of the Illinois Constitution of 1970 because the reassessment was limited to only Belleville Township with three exceptions and to only commercial and industrial properties situated therein. Further, the court found the reassessments to be an unauthorized

attempted classification of property in violation of article 9, section 4(b) of the Illinois Constitution and in violation of the equal protection of the laws. Next the court found that the combination of "errors, omissions and statutory violations" were such as to constitute a constructive fraud, a denial of due process to the taxpayers and resulted in a tax unauthorized by law. These errors, omissions and statutory violations consisted of the following: First, the court found that by making a "partial general assessment" of District Two in a nonquadrennial year, the Board of Assessors violated section 43 of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, par. 524). Secondly, the court found that this provision was also violated when the appraisals made by a private company were "blindly accepted by the Assessor and his deputies without actually viewing and personally determining" the value of each property. Next, the court found three violations of section 96 of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, par. 577), in that the work of the Board of Assessors was not completed until December 15, 1972; that the required affidavit was not then attached to the assessment books; and that when it was eventually attached, it incorrectly stated that the work had been completed on September 15. Further the court found that the Board of Assessors, by failing to return the assessment books to the Board of Review by the third Monday in June 1972, violated section 100 of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, par. 581). Lastly, the court found a violation of section 102 of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, par. 588), in that the Board of Review conducted its work in January 1973, after its authority had expired.

On appeal, the appellants present numerous issues for review in part stemming from the anomalous consolidation of the various administrative review cases and tax objection cases. Since, however, we find the evidence to be insufficient to support the trial court's ruling we will focus our attention on this dispositive issue.

The appellants contend that the evidence presented by the taxpayers fails to show a violation of the requirement of uniformity in taxation. We agree.

Article 9, section 4(a), of the Constitution of 1970 provides that:

"Except as otherwise provided in this Section, taxes upon real property shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law."

In discussing an analogous provision of the prior constitution, the court in *Apex Motor Fuel Co. v. Barrett*, 20 Ill. 2d 395, 169 N.E.2d 769, stated:

"Uniformity in taxation, as required by the constitution, implies equality in the burden of taxation, and this equality in burden cannot exist without uniformity in the basis of assessment as well as in the rate of taxation. [Citation.] The rule of uniformity requires

an equality of taxation in proportion to the value of the property taxed. It prohibits the taxation of one kind of property within the taxing district at one value while the same kind of property in the same district for taxation purposes is valued at either a grossly less value or a grossly higher value." (20 Ill. 2d 395, 401, 169 N.E.2d 769, 773; see also *People ex rel. Tedrick v. Allied Oil Corp.*, 388 Ill. 219, 57 N.E.2d 859; *M.F.M. Corp. v. Cullerton*, 16 Ill. App. 3d 681, 306 N.E.2d 505.)

Under the provisions applicable to the instant case, the taxpayers' property was to be valued for taxation purposes at 50% of the actual value of the property. (Ill. Rev. Stat. 1971, ch. 120, pars. 482(24), 501.) The chief clerk of the Board of Assessors testified that he was instructed to take 50% of the actual value of the taxpayers' properties as established by the appraisals that had been made, and place these on the assessment rolls. It is undisputed that this was done by him. The taxpayers presented no evidence showing that other commercial and industrial property or other kinds of property in District Two were assessed at a lower percentage rate of actual value than was required by law and applied to them. Nor was there evidence that the appraisals upon which their assessments were based had not represented the actual values of their real properties. Moreover, there was no evidence that other real property in District Two was undervalued except for some evidence of a sales-ratio study of 20 randomly picked properties showing variations between the assessed value and the sale price which evidence alone, we find to be inconclusive. Thus the record is barren of evidence showing that as compared to other property in the taxing district, that the tax paid by the taxpayers was disproportionate to the value of their properties.

■■ The taxpayers, however, rely on the fact that in each instance, the reassessments in issue resulted in a higher assessment of the properties, and that only a limited group of properties were so reassessed. When analyzed, the taxpayers' assertion appears to be that the mere fact that only a limited group of properties in District Two were reassessed establishes *per se* a lack of uniformity in taxation. We find no authority supporting such an assertion and we find it unpersuasive.

■■■ While the trial court found the reassessments to be a "partial general assessment" in a nonquadrennial year in violation of section 43 of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, par. 524), we find to the contrary, the reassessments to constitute proper revisions of assessments authorized by sections 46 and 96 of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, pars. 527, 577). (See also Ill. Rev. Stat. 1971, ch. 120, par. 525.) It should be noted in this regard that these sections place no limitation to the number of revisions which may be properly made.

Section 46 provides in pertinent part that:

"* * * the board ·of assessors * * * may in any year revise an assessment and correct such assessment as shall appear to * * * them to be just. * * *"

The taxpayers in objecting to the reassessments on the basis of lack of uniformity bore the burden of proving the disparity of assessment valuations by clear and convincing evidence. (*Stephens v. Property Tax Appeal Board*, 42 Ill. App. 3d 550, 356 N.E.2d 355.) In the case at bar no evidence was presented showing the incorrectness of the revised assessments nor that the taxpayers' properties were assessed higher than other property in the same taxing district. Hence, although the revised assessments resulted in a higher assessment of the taxpayers' properties, it can only be concluded that such higher assessments resulted in uniformity in taxation since a lack of uniformity was not proven.

On a related issue the appellants contend that the trial court erred in finding the revised assessments to be an invalid "attempted classification" of the properties and violative of equal protection of the law. We agree. Article 9, section 4(b), of the Illinois Constitution of 1970 authorizes certain counties to permit a classification system for the purposes of taxation, however, the evidence shows that St. Clair County did not permit classification. As we stated in *People ex rel. Jones v. Adams*, 40 Ill. App. 3d 189, 195, 350 N.E.2d 767, 772:

"Classification refers to the categorizing of real property according to its use, for the purpose of determining at which percentage of fair market value the property should be assessed."

In the case at bar there was no evidence that the level of assessment of the taxpayers' properties was different than that of other property in the taxing district. In fact, the contrary was shown. Thus the trial court erred in ruling the Board of Assessors' actions to be an attempted classification. That the Board of Assessors chose to revise the assessments of only certain properties is of no import in light of their statutory authority to do so. (See *Mid-Continental Realty Corp. v. Korzen*, 40 Ill. App. 3d 133, 351 N.E.2d 376.) Moreover, in view of the total absence from the record of any proof that a different rate or level was applied to the taxpayers' properties as opposed to other real property within the district, the taxpayers have failed to show a violation of the equal protection of the laws. As stated in *Adams*:

"To succeed with an argument based upon the equal protection of the laws, a party must at least show that he has been discriminated against by the statute or action about which he complains." 40 Ill. App. 3d 189, 196, 350 N.E.2d 767, 772.

We lastly turn to the appellants' contention that the trial court erred in

ruling that the numerous violations by the taxing officials of statutory procedures constituted a constructive fraud, a denial of due process and resulted in a tax unauthorized by law. We agree.

■■ In *People ex rel. Frantz v. M.D.B.K.W., Inc.*, 36 Ill. 2d 209, 211, 221 N.E.2d 650, 652, the court stated what must be shown by a taxpayer to demonstrate constructive fraud:

> "It is only where the property has been grossly overvalued, the assessed valuation being reached under circumstances showing either lack of knowledge of known values or a deliberate fixing of values contrary to the known value, that fraud in law will be inferred. Before the conduct of the taxing authorities will be considered constructive fraud, the evidence must clearly establish that the assessment was made in ignorance of the value of the property, or on a judgment not based upon readily ascertainable facts, or on a designedly excessive basis."

We note that the taxpayers' theory of constructive fraud urged in the lower court and now on appeal in support of the ruling, is broader than the court's ruling in that they argue that all the claimed constitutional and statutory violations taken together constitute constructive fraud. As previously discussed, we find the record devoid of evidence showing that the taxpayers' properties were overvalued and the evidence is insufficient to show the claimed lack of uniformity, denial of equal protection, or invalid classification. While it is undisputed that the evidence does show certain violations of statutory procedures, we find no authority that these violations, either singly or in combination, constitute a constructive fraud as defined in *Frantz*.

Moreover, it is undisputed that, as the record shows, the taxpayers received proper notice of the revisions of their assessments and that they had full opportunities to be heard. This was all that due process required. *People ex rel. Ball v. Anderson*, 21 Ill. 2d 396, 172 N.E.2d 760, *appeal dismissed*, 368 U.S. 18, 7 L. Ed. 2d 86, 82 S. Ct. 137; *Goodfriend v. Board of Appeals*, 18 Ill. App. 3d 412, 305 N.E.2d 404.

■■ The numerous statutory violations of which the taxpayers complain are all essentially irregularities in the assessment process. Section 315 of the Revenue Act of 1939 (Ill. Rev. Stat. 1971, ch. 120, par. 796) provides that:

> "A failure to complete an assessment in the time required by this Act shall not vitiate such assessment, but the same shall be as legal and valid as if completed in the time required by law."

Section 316 of the Act (Ill. Rev. Stat. 1971, ch. 120, par. 797) further provides that:

> "No assessment of real or personal property or charge for taxes

thereon, shall be considered illegal on account of any informality in making the assessment, or in the tax lists, or on account of the assessments not being made or completed within the time required by law."

Moreover, section 235 of the Act (Ill. Rev. Stat. 1971, ch. 120, par. 716) provides in part that:

"* * * no error or informality in the proceedings of any of the officers connected with the assessment, levying or collection of the taxes, not affecting the substantial justice of the tax itself, shall vitiate or in any manner affect the tax or the assessment thereof * * *."

Applying these provisions to the instant case, we find that the statutory violations complained of are more irregularities, omissions and defective acts not affecting the substantial justice of the tax itself and are insufficient to defeat the tax or revised assessments. (*People ex. rel. Schlaeger v. Buena Vista Building Corp.*, 396 Ill. 164, 71 N.E.2d 10.) That the Board of Assessors failed to go to the taxpayers' properties and actually view it is insufficient to defeat the assessment. (*People ex rel. Smith v. Coen*, 415 Ill. 73, 112 N.E.2d 119.) That neither the Board of Assessors nor the Board of Review completed their tasks by the statutory date likewise does not defeat the assessment. (*People ex rel. Ball v. Anderson*, 21 Ill. 2d 396, 172 N.E.2d 760, *appeal dismissed*, 368 U.S. 18, 7 L. Ed. 2d 86, 82 S. Ct. 137; *Farmers & Merchants Bank v. City of Vandalia*, 57 Ill. App. 681.) Nor do the defects associated with the affidavit suffice to vitiate the assessment. *People v. Kimmel*, 323 Ill. 261, 154 N.E. 97.

Accordingly, for the foregoing reasons we reverse the judgment entered by the circuit court of St. Clair County.

Reversed.

CARTER, P. J., and G. J. MORAN, J., concur.